IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BIO WORLD MERCHANDISING, INC., | § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | CIVIL ACTION NO. 3:19-cv-2072-E |
| INTERACTIVE BUSINESS INFORMATION SYSTEMS, INC., | | |
| Defendant. | | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's Rule 12(b)(3) Motion to Dismiss for Improper Venue or in the Alternative Transfer under 28 U.S.C. § 1404(a) (Doc. No. 4). The case involves conflicting forum selection clauses. After careful consideration, the Court denies the motion to dismiss and grants the motion to transfer.

### **Background**

Plaintiff Bio World Merchandising, Inc. initiated this lawsuit in state court in Dallas County. Defendant Interactive Business Information Systems, Inc. removed the case to this Court on the basis of diversity jurisdiction. It then filed its motion to dismiss for improper venue and alternative motion to transfer.

Plaintiff is a Texas corporation with its principal place of business in Irving, Texas. Defendant is a Georgia corporation with its headquarters in Peachtree Corners, Georgia. Plaintiff's live pleading alleges venue is proper in Dallas County, Texas, pursuant to Section 15.002 of the Texas Civil Practice and Remedies Code as the county in which all or a substantial part of the

1

events giving rise to the claim occurred.  Section 15.002(a)(1) is virtually identical to its federal counterpart, 28 U.S.C. § 1391(b)(2).

As alleged in Plaintiff's complaint, Plaintiff negotiates exclusive licenses with high recognition brands and manufactures and distributes apparel and accessories.  Its primary business model for over 20 years had been to use contracted manufacturing centers to provide goods distributed through a wholesale network to large and independent retail outlets.  In 2017, however, it began to sell directly to consumers through eCommerce sites.  The complaint alleges that the "new Direct to Consumer (D2C) business is operating out of Dallas, Texas area headquarters and warehouse and is operating out of an affiliated entity."

Before 2018, Plaintiff was not using an Enterprise Resource Planning (ERP) system to manage its business.  According to the complaint, ERP is a process used by companies to manage and integrate the important parts of their business.  ERP software applications help companies implement resource planning by integrating all of the processes they need to run a company with a single system.  An ERP software system can integrate planning, purchasing, inventory, sales, marketing, finance, and human resources.

In 2018, Plaintiff contracted with Defendant for implementation of a fully integrated ERP solution—Microsoft Dynamics 365 Enterprise (D365)—for one of Plaintiff's entities.  Plaintiff alleges the parties entered into "three (3) Statements of Work ('SOW's'), whereby [Defendant] agreed to implement a fully integrated ERP solution on a single platform that would meet [Plaintiff's] current and future business requirements."  The timeline for the project was critically important to Plaintiff.  The timeline included a "Go Live Date" of July 1, 2018, so that implementation would be complete in time for Plaintiff's busy fourth quarter.  Plaintiff alleges Defendant did not meet the July 1, 2018 date and thus the "Go Live Date" was delayed to October

30, 2018.  Even then, Plaintiff was "only able to stay in the system for about one week" and had to revert back to its old system. Plaintiff contends Defendant overstated and misrepresented its knowledge of Microsoft Dynamics.  Plaintiff alleges that as a result of Defendant's failed implementation, Plaintiff had to retain replacement implementation consultants.  The replacement consultants identified the problems, and Plaintiff was able to "go live" on February 4, 2019.  Because of Defendant's failed implementation, Plaintiff suffered lost sales and profits and poor customer service reviews.  It also had to pay additional consulting fees to the replacement consultants.

Plaintiff asserts a claim for breach of contract and also seeks a declaratory judgment. Plaintiff alleges Defendant "breached the SOW's" because the projects to implement D365 did not result in a successful implementation.  Plaintiff also seeks a declaratory judgment that it owes no additional amounts to Defendant under the SOWs.  Plaintiff alleges Defendant has previously made demand on it for money owed under the SOWs, including the third SOW.  Plaintiff also seeks its attorney's fees and costs.

In its motion, Defendant alleges it is entitled to dismissal because venue is not proper in this district.  It argues Plaintiff's complaint offers no allegations that demonstrate venue is proper here under 28 U.S.C. § 1391(b).  Defendant also argues that by filing suit in Texas, Plaintiff has breached the following forum selection clause found in two of the three SOWs, which were entered into in March 2018:

> Governing Law:  This SOW shall be governed by and construed in accordance with Georgia law.  Any action seeking enforcement of this SOW or any provision hereof shall be brought exclusively in the courts of record of the State of Georgia in Gwinnett County or the District Court of the Northern District of Georgia, Atlanta Division.

Alternatively, if the Court denies the motion to dismiss, Defendant asks the Court to transfer the case to the Northern District of Georgia under 28 U.S.C. § 1404(a).

In response, Plaintiff argues it has presented facts to demonstrate that venue is proper in this district under § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in Dallas County. In addition, Plaintiff notes that Defendant has omitted from its motion the fact that the third SOW at issue contains a different "Governing Law" provision. That SOW, dated October 29, 2018, states that it shall be governed by Texas law and that any action seeking enforcement of the SOW shall be brought exclusively in the courts of record of the State of Texas in Dallas County. Plaintiff argues that when there are conflicting forum selection clauses, courts analyze a motion to transfer under a traditional § 1404(a) analysis. Plaintiff contends that under such an analysis, Defendant's motion should be denied.

In its reply, Defendant contends that Plaintiff's failed implementation claims arise solely under the March 2018 SOWs. Defendant argues that nothing in Plaintiff's complaint shows why venue is proper in this district, why the SOWs should be considered as one, and why the forum selection clauses do or do not apply. Even if there were conflicting forum selection clauses in this case, according to Defendant, transfer is still proper under § 1404(a).

## Motion to Dismiss

The Court first considers Defendant's assertion that it is entitled to dismissal of this lawsuit under Rule 12(b)(3) because Plaintiff did not file it in a proper venue. *See* FED. R. CIV. P. 12(b)(3). Whether venue is improper is generally governed by 28 U.S.C. § 1391. *Atlantic Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). Section 1391 provides that a civil action may be brought in: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which

a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.  28 U.S.C. § 1391(b).  When venue is challenged, the court must determine whether the case falls within one of these three categories.  *Atlantic Marine*, 571 U.S. at 56.  If it does, venue is proper.  If it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a).  *Id.*  The existence of a forum selection clause has no bearing on the question of whether a case falls into one of the categories listed in § 1391(b).  *Id.*  As a result, a case filed in a district that falls within § 1391(b) may not be dismissed under Rule 12(b)(3).  *Id.*

Courts are divided on which party bears the burden of proof on a motion to dismiss for improper venue.  *Galderma Labs., L.P. v. Teva Pharm. USA, Inc.*, 290 F.Supp.3d 599, 605 (N.D. Tex. 2017).  The Fifth Circuit has not ruled on this issue.  *Id.*  Most district courts within this circuit have determined that once a defendant challenges venue, the plaintiff has the burden to prove that the chosen venue is proper.  *Id.*  When considering a motion to dismiss under Rule 12(b)(3), the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments.  *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009); *Galderma*, 290 F.Supp.3d at 606.

Plaintiff's complaint alleges that all or a substantial part of the events or omissions giving rise to the claim occurred in Dallas County.  Defendant argues that Plaintiff's complaint offers no factual allegations to support this legal conclusion.  Defendant provided an appendix in support of its motion to dismiss, which consists of the three SOWs.  The two March 2018 SOWs provide that "[a]ll Work will be delivered at the "Client office in Irving, TX."  The objective of the third SOW,

dated October 2018, is to "provide post go live support," and the primary support location is in Irving, Texas.  Venue for a breach of contract action is generally proper at the place of performance of the contract.  *See American Carpet Mills v. Gunny Corp.*, 649 F.2d 1056, 1059 (5th Cir. 1981). As such, the record reflects that venue is proper in this district under § 1391(b).  Accordingly, the Court denies Defendant's motion to dismiss for improper venue.

## Motion to Transfer

As an alternative to dismissal, Defendant argues the case should be transferred to the Northern District of Georgia under the forum selection clause contained in the March 2018 SOWs. Although a forum selection clause does not render venue improper within the meaning of § 1406(a) or Rule 12(b)(3), it may be enforced through a motion to transfer under § 1404(a).  Section 1404(a) provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a). A proper application of § 1404(a) requires that a forum selection clause be given controlling weight in all but the most exceptional cases.  *Atlantic Marine*, 571 U.S. at 60.  The presence of a valid forum selection clause requires district courts to adjust the usual § 1404(a) analysis in three ways. *Id.* at 63.  First, the plaintiff's choice of forum merits no weight.  *Id.*  The plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed.  *Id.* at 63–64.  Second, the court should not consider arguments about the parties' private interests.  *Id.* at 64.  When parties agree to a forum selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or witnesses, or for their pursuit of the litigation.  *Id.* Third, when a party bound by a forum selection clause flouts

its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules.  *Id.*

Forum selection clauses are presumptively valid.  *Afram Carriers, Inc. v. Moeykens*, 145 F.3d 298, 301 (5th Cir. 1998).  Only mandatory clauses justify transfer.  *Weber v. PACT XPP Tech., AG*, 811 F.3d 758, 768 (5th Cir. 2016).  The clauses at issue in this case are both mandatory.  *See id.* (clause is mandatory only if it contains clear language specifying that litigation must occur in specified forum).

Defendant maintains that only the forum selection clauses in the March SOWs are implicated in this case and that under *Atlantic Marine* the case should be transferred to Georgia. It notes that Plaintiff did not plead venue under the forum selection clause in the October 2018 SOW, but only under section 15.002 of the civil practice and remedies code.  Defendant contends Plaintiff has manufactured a forum selection clause conflict when its complaint does not contain any allegations in support of such a conflict.  Finally, Defendant contends that even under a § 1404(a) analysis, transferred is warranted.

Plaintiff responds that *Atlantic Marine* did not involve conflicting forum selection clauses. Plaintiff argues the three SOWs are part of one project to implement the ERP software.  Plaintiff urges that the appropriate thing to do in the face of the conflicting forum selection clauses is to decide Defendant's motion under a traditional § 1404(a) analysis.  Under such an analysis, there is a strong presumption in favor of the plaintiff's choice of forum and the defendant bears the burden of demonstrating that the factors weight heavily in favor of transfer.  According to Plaintiff, Defendant has not established the relevant factors weigh in favor of a transfer.

The Court is not persuaded by Plaintiff's argument that in light of the two different forum selection clauses, the Court should determine venue under a traditional § 1404(a) analysis.  The

case law reveals varying approaches to this situation.  In cases involving competing forum selection clauses, the analysis of which forum selection clause to enforce, or whether to enforce any at all, is dependent on the facts of the case.  *Corsentino v. Meyer's RV Ctrs. LLC*, No. 20-03287, 2020 WL 4199744, at *8 (D. N.J. July 22, 2020); *see In re Rolls Royce Corp.*, 775 F.3d 671, 681 (5th Cir. 2014) (recognizing, in case involving one forum selection clause that not all parties were subject to, that analysis of motion to sever and transfer claims of one party was "fact-sensitive").  There is not a "one size fits all analysis" for this situation.  *Samuels v. Medytox Sols., Inc.*, No. 13-7212, 2014 WL 4441943, at *6 (D. N.J. Sept. 8, 2014).  A number of courts faced with multiple valid and conflicting clauses have simply selected one to enforce, looking to all the facts and circumstances of the case.  *James C. Justice Co. v. Xcoal Energy & Res.*, No. 7:14cv00170, 2015 WL 13660456, at *10 (W.D. Va. Feb. 9, 2015); *see Schrenkel v. LendUS, LLC*, No. 2:18-cv-382-FtM-29CM, 2018 WL 5619358, at *6 (M.D. Fl. Oct. 30, 2018).  The Court will take this approach.  *See also Asoma Corp. v. SK Shipping Co.*, 467 F.3d 817, 822 (2d Cir. 2006) (when two sides have put forth different contracts each containing forum selection clause designating different forum, and parties do not dispute facts giving rise to conflicting contracts, court must decide as matter of law which forum selection clause governs).

Plaintiff's live pleading is not lengthy or detailed; it is 7 pages total.  Plaintiff has included an appendix to its response to the motion.  It includes an affidavit from its Chief Information Officer, Shawn Stauffer.  The affidavit contains details not included in the complaint about the parties' SOWs.  Stauffer states each SOW dealt with different phases of the project and "were all parts of the same Project."  He further states that each SOW had to be satisfied for successful implementation of the project.  Stauffer maintains any assertion that the unsuccessful implementation is governed solely by the first two SOWs is incorrect.  Stauffer states Plaintiff's

claims arise out of all three SOWS.  The appendix also includes an April 2019 demand letter from Defendant to Plaintiff for payment of outstanding invoices.  In the letter, Defendant seeks a total of  $229,142,18, which includes amounts due under all three SOWS plus interest.

The crux of Plaintiff's lawsuit is Defendant's failure to successfully implement D365.  Despite the Stauffer affidavit, the Court is not convinced the three SOWs should be read together or that the breach of contract claim involves the third SOW at all.  Plaintiff's original complaint asserted only a breach of contract claim regarding failed implementation.  Two weeks later, and four days before Defendant filed its notice of removal, Plaintiff amended its complaint to add its claim seeking a declaration that it owes no additional amounts to Defendant.  Under that claim, Plaintiff alleges Defendant previously made demand on it for "amounts under the SOW's, including the third SOW."

The majority of the contracts between the parties—two out of three—provide for a Georgia forum.  The two March SOWs, with Georgia forum selection clauses, describe their objective as "an effort to implement a new ERP solution at Bio World."  The agreed-upon price included development, project management, testing, user training, and Go Live assistance.  Post Go Live support was not included in these agreements.  The March agreements state that a separate SOW will be created for this, as needed.  The October SOW states that its objective is "to provide post go live support to the business by handling questions, working on issues, testing any bug fixes needed during the 4 week post go live period."  The stated goal of the SOWs with the Georgia forum selection clauses was implementation of the ERP.  The stated goal of the SOW with the Texas forum selection clause was to provide support after the software went live.  The gist of Plaintiff's complaint is that Defendant failed at implementing the software.  The original "go live" date was delayed until October 30, 2018.  Even then, Plaintiff had to revert to its old system after

about a week.  As a result of the failed implementation, Plaintiff had to hire different consultants, who helped it "go live" in February 2019.  The amended complaint does not include any allegations about the support or lack thereof that Defendant provided after the software went live.  To the extent the breach of contract claim does involve the third SOW, its involvement is minimal in comparison to the first two.

Although Plaintiff seeks a declaration that it owes no money to Defendant under any SOW, including the October SOW, the Court finds that Plaintiff's declaratory judgment claim under the October SOW is a relatively small part of the lawsuit.  Under the first March SOW, Defendant's consulting fees were $375,360.  Under the second March SOW, Defendant's consulting fees were $114,320.  Under the October SOW, the cost of the post Go Live support was $31,200.  The clear majority of the consulting fees for Defendant's services are from the first two SOWs.  Likewise, the majority of amounts allegedly still owed at the time of the demand letter are for the first two SOWs.  Plaintiff does not have any claim that involves only the third SOW.  At best, both of its claims involve all three SOWs.  For these reasons, the Court finds that the forum selection clause contained in the two March SOWs should be given controlling weight.  *See Primary Color Sys. Corp. v. Agfa Corp.*, No. 17-00761, 2017 WL 8220729, at *7 (C.D. Ca. July 13, 2017) (where case involved conflicting forum selection clauses, Court enforced clause out of which majority of plaintiff's claims arose).

Accordingly, in the interest of justice, the Court grants the motion to transfer to a district to which all parties have consented.  *See* 28 U.S.C. § 1404(a).  This case is transferred to the United

States District Court for the Northern District of Georgia, Atlanta Division.

**SO ORDERED.**

Signed October 9, 2020.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE